CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. NANCY L. FEATHERLY, ADMINISTRATRIX.

FILED MARCH 19, 1902.   No. 11,200.

Commissioner's opinion, Department No. 3.

1. **Damages: NEGLIGENCE: BURDEN OF PROOF.** In an action for damages resulting from the alleged negligence of the defendant, when the evidence on the part of the plaintiff is such as to justify a finding that his own negligence contributed to the injury complained of, the burden of proof is on the plaintiff to show the absence of such negligence.

2. **Charging Jury:** Contributory Negligence: Burden of Proof. On the facts stated, *held*, that the court erred in charging the jury that the burden of proof was on the defendant to show contributory negligence.

Error from the district court for Saline county. Tried below before Hastings, J. *Reversed.*

*J. W. Deweese, Fayette I. Foss* and *Frank E. Bishop,* for plaintiff in error.

*George H. Hastings, contra.*

Albert, C.

This action was brought by Nancy L. Featherly, as administratrix of the estate of John Raley, deceased, against the Chicago, Burlington & Quincy Railroad Company, to recover damages sustained by the alleged negligence of the defendant, whereby the intestate was struck and fatally injured by moving cars while attempting to cross the defendant's track on a public crossing in the city of Crete. There was a verdict for the plaintiff, and from a judgment rendered thereon the defendant prosecutes error to this court.

Contributory negligence was relied upon as a defense, and touching the question of negligence on the part of the respective parties the court instructed the jury as follows: "The establishment of negligence on the part of defendant by a preponderance of the evidence is necessary before you can find any verdict for plaintiff in any event. If you find there was such negligence on the part of defendant, then the burden of proof is on the defendant to show by a preponderance of the evidence, the truth of its assertion that John Raley was negligent and so helped to cause his own injury." The defendant insists that this instruction is bad, because, from the evidence adduced on the part of the plaintiff in making her case, the jury might justly have drawn the inference that the negligence of the intestate directly contributed to the injury in question, and for that reason the burden of proof was not on the defendant to

show contributory negligence, but was on the plaintiff to show the absence of such negligence. It is the settled rule in this state that in an action for damages resulting from the alleged negligence of the defendant, when the testimony on behalf of the plaintiff is such as to justify a finding that his own negligence contributed to the injury complained of, the burden of proof is on the plaintiff to show the absence of such negligence on his part. *Durrell v. Johnson*, 31 Nebr., 796; *Union Stock Yards Co. v. Conoyer*, 41 Nebr., 617; *Omaha Street R. Co. v. Martin*, 48 Nebr., 65. That the intestate was struck by cars moving on the defendant's track while attempting to pass over one of the public crossings on the defendant's road, and thereby received injuries of which he died in a few hours, for present purposes, at least, may be taken as true. It will be conceded that, even were it conclusively established that such injuries would not have occurred but for the negligent acts or omissions of the defendant, the plaintiff would not be entitled to a verdict, were it also shown that the negligence of the intestate directly contributed to the injury. In other words, notwithstanding the negligence of the defendant, if there was an omission on the part of the intestate to exercise such care and prudence as a man of ordinary care and prudence would have exercised under like circumstances, and such omission directly contributed to the injury in question, there can be no recovery in this case. The circumstances attending the accident are best related by a brother of the intestate, who was with him at the time, and who testified as a witness on behalf of the plaintiff. His testimony, so far as we deem material to the present inquiry, is as follows:

Q. 52. When you got to the railroad track that night, going north, state precisely what happened to you and your brother?

A. Well, we came up near the track and stood there at least two or three minutes. I think there were two—I am favorably impressed with the belief that there were two trains on the track, and we stood some time. I noticed

particularly that right east there was a car standing, as well as I could see; and after we had staid a certain length of time my brother, John, says, "Now" and we started across with a somewhat hurried step, because of the distance across the track (there being a switch there that increases the width of the track) ; and, knowing the distance, we hurried over. I do not know how we got over, really. I know that we were struck and boosted off the track. I was unconscious, I could not tell what had happened. It did not seem to me that we realized what had happened, but I lay in such a way that my head was next to the track going north, yet, when I came to, to some extent, my head was laying within a couple of feet of the track. I noticed when a light came, and a light, I think, came from the backing down of the engine, that threw the headlight upon it, so that I could see more what was going on. John laid about six or eight feet from me,—west of me,—lying in the same position. I says, "John, we must get out of here."

Q. 62. I wish you would describe to the jury, Mr. Raley, just the condition of the street and the railway train, or trains that night there at the crossing where this accident occurred.

A. The sidewalk had been filled in with coal and ashes so that it had a tendency to darken everything around about over the right of way; and the train was separated mainly over the sidewalk and the right of way (highway). I thought I could see a car right eastward and the balance of the train to the westward, and we started across, as I said. They were separated in that way, yet I think there were two trains on the track, or cars that were attached to the engine. I don't know how many. The end car was about a rod and a half from the sidewalk standing partly on the right of way (highway).

Q. 63. In which direction from the sidewalk?

A. East of the sidewalk, supposing the streets run east and west and north and south,—the road angles.

Q. 64. On which side of the street was the engine on?

A. The east side.

Q. 65. And the balance of the train,—which side of the street was that on?

A. On the west.   They had separated.

Q. 66. Can you tell what it was that struck you, or your brother?

A. The train came right on to us.   We had no warning. Evidently, the car.   I did not realize that it was the car. I did not realize what it was, it was so sudden, I was so bewildered that it could not have been much else; it could not have been thunder or lightning.

Q. 115.   I suppose you were talking as you went along up this street?

A. Yes, sir.

Q. 117. How was your eyesight at that time?

A. Well, my eyesight is poor.

Q. 118. How was your hearing at that time?

A. My hearing is not good, but I think it was better.   I am under the impression that up to that date it was better than it has been since.

Q. 119. But it is not very good at any time?

A. I don't hear ordinary conversation.

Q. 164.   You were so intent looking out for your footing on the street that you paid no attention to the electric light, and don't know whether there was any light or not?

A. I depended upon my brother.   His eyesight was better than mine.

Q. 129. As you approached these switches that night, did you stop and listen to see if you could hear any trains?

A. I don't remember that we did.

Q. 130. Did you and your brother speak of the fact that you were coming to the railroad?

A. No; I don't think there was any conversation on that point.

Q. 131. When you came up to the railroad you walked directly along, as you ordinarily would on the sidewalk, across these tracks, did you?

A. We walked up near the track, and hesitated.

Q. 133. You saw a couple of trains there?

A. I think so. My impression is that there were two trains.

Q. 137. Did you notice that an engine passed over the street going east while you were between the Cosmopolitan Hotel and the railroad track?

A. I did not. I heard the trains in motion, but paid no attention to them. I heard trains on the track.

Q. 138. You and your brother heard trains on the tracks, but paid no attention to them?

A. We knew it was a railroad track, and I very often went up the railroad track home; but because of the darkness, and because of the trains being on the track, as I said a while ago, I went this other way.

Q. 139. At the depot you knew or found out that there were some freight trains on the track so that it would be dangerous for you to go up the track?

A. Yes, sir.

Q. 140. Therefore, you went the ordinary route, by the sidewalk, around by the Cosmopolitan Hotel, and went over in that way, thinking that on that account you would be less liable to get into trouble with the cars?

A. Yes, sir.

Q. 169. Whereabouts were you with your brother that night when you stopped and looked, as you speak?

A. We were on the south side of the track. We were about a rod or a rod and a half from it, standing there near that electric light pole, or some other pole, we stood there a long time.

Q. 170. How long a time did you remain?

A. We were there a good little bit, at least two or three minutes, sure.

Q. 171. Did your brother stop also?

A. Yes, sir.

Q. 172. After you had stopped and looked and listened, then you started across?

A. Yes, sir.

Q. 141. After you had stood a while, when you got to

the tracks, then you started hurriedly to go north,—you and your brother?

A. Yes, sir.

Q. 142. It was just after that you had started to go hurriedly, that some object hit you?

A. Yes, sir.

Q. 173. How far did you proceed or walk after you started—after you stopped and listened—before you were knocked down?

A. We had got, I should think, mainly over the track?

The foregoing is the substance of the evidence tending to show the degree of care exercised by the intestate to guard himself against injury. In view of the rule, touching the question of contributory negligence, hereinbefore stated by giving the instruction complained of, the court, in effect, held, as a matter of law, that the foregoing evidence would not justify a finding of contributory negligence,— in other words, that from such evidence reasonable minds could reach no other conclusion than that the intestate, in attempting to cross the track at the time and in the manner he did, exercised such care as a man of ordinary prudence would have exercised under like circumstances. Negligence is rarely an unmixed question of law. In the present case, whether the intestate was negligent would depend largely on what he saw and heard that was calculated to warn him of danger in attempting to cross the track. It will be conceded that if he saw the approaching cars, but took the risk of crossing in front of them, or was warned of their approach in any such way as would have deterred a man of ordinary prudence, under like circumstances, from attempting to cross the track, he was guilty of contributory negligence. Whether he saw the approaching cars, or was in any way warned of their approach, and what knowledge he had of the risk he assumed in making such attempt, can only be surmised. What the witness whose testimony is quoted, saw or heard, throws little light on the subject, for the reason that both his sight and hearing were defective, and on that account he relied at

the time on the intestate, who was more fortunate in that regard. Not knowing the nature and extent of the information of the intestate as to the risk he assumed in attempting to cross the track, in our opinion, it can not be said, as a matter of law, that in making such attempt he exercised such care as a man of ordinary prudence would have exercised under like circumstances; nor, in view of the facts, can it be said that, from the evidence quoted, reasonable minds could reach no other conclusion than that he exercised such care. If we are correct in this view, the instruction under consideration is erroneous.

Objections are urged against other parts of the charge to the jury, but, aside from the paragraph just considered, the charge, taken as a whole, in our opinion, fairly states the law applicable to the facts. Other questions are argued, but, as they are not likely to arise on another trial, we have not considered them.

It is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings according to law.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED